United States
      Appelle,           Docket No. 21-3077

  V.

Elgin Brack
      Defendant-Appellant

      The defendant respectfully submits these Documents to the courts as the defendants Pro se supplemental brief and which this is just the cover letter

1/10

1/11/23

The defendants arguments about his unlawful arrest is not irrelevant because in order for the courts to find that the evidence inevitably would have been discovered in the course of an inventory search a court must make three findings an the first one says (United states V. Ruffin 841 F. App'x 319 320 2d Cir. 2021)

(1.) that the police had legitimate custody of the vehicle or other property being searched so that an inventory would have been justified.

The Agents did not have legitimate custody of the defendants backpack because he was unlawfully arrested.

LT. Smith claims that he told Sparta member Finbarr Fleming at the felony carstop the night of the defendants unlawful arrest "that's him or that's the guy meaning the suspect while Finbarr Fleming was taken the defendant out of the vehicle. I mmediately and this was the reason for the defendants arrest but if LT. Smith would have honestly told Finbarr Fleming this it would show if not through any legal documents connected to this case then atteast it would show through his actions.

2/10                                                    1/11/23

If you're conducting a felony carstop and the highest ranking officer or agent tell's you" that's him" or" that's the guy" meaning the suspect who allegedly went on a Robbery spree and almost killed someone 10 to 15 hours ago and you are in physical contact with the suspect that officer or agent is going to do a Protective pat down and handcuff the suspect before handing him off to the officer or agent behind him for his safety atleast if not for protocol.

Also

if LT. smith would have told finbarr fleming" that's him or that's the Guy". AT trial when attorney for defense asked fleming " Do you know the terms of the defendant being placed in a Police vehicle" he replied" NO" (tr. 952 953). He would have known if LT. smith ID'd the defendant as the suspect to him at the scene of the carstop.

Finbarr flemings trial testimony contradicts LT. smith suppression testimony Regarding the defendants arrest (Tr. 946 to 955) His testimony shows he did not see or think of defendant as a threat or suspect.

Which shows LT. smith's testimony is false and unworthy of belief and defies the laws of natural physic and should not

3/10                                                           1/11/23

be credited.

The Driver's consent to search was clearly coerced (see attached) but Mendez 315 F.3d at 138 says (courts may conclude that even if the invalid search had not been conducted the evidence would nonetheless have been discovered in the course of a valid inventory search conducted pursuant to standardized established procedures).

The inventory search was invalid too, even if the ATF legally seized the vehicle the defendant was in during the felony carstop the night of arrest. The ATF agents did not follow standardized established procedures. NYPD Det. Nuzio admitted to being the one who inventoried the defendants backpack that was in the car (tr. 333) It clearly says in the inventory protocols 127. Processing vehicles/conveyances (B)(2) "An inspection and inventory will be completed by the seizing agent and designated storage contractor representative". Det. Nuzio admitted to not being a ATF agent or apart of Sparta (joint task force) at the time of the inventory search of the defendants property. (tr. 329)

It also says in the ATF inventory protocols (D)(3) Inventory of seized vehicle, vessel or

down
Below
Pg 385
+ 0386

1/11/23

or Aircraft" All personal property will be inventoried on an ATF F. 3400.23 and removed before the vehicle is turned over to the national property contractor". Det. Nuzio admits to not filling out a ATF F. 3400 23 (tr. 343 / 342 ) after inventoring the defendants backpack.

All through out the inventory protocols it gives the ATF agents Jurisdiction to inventory search the vehicle "No other agency". Even if the courts were to accept a coerced consent to search the driver gave, The search was improper because he gave it to the ATF not the NYPD.

LT. Sm
ith testified about the ATF's and NYPD's inventory polices that Sparta Regularly conducts inventory searches. Several agents testify to seeing the backpack on the backseat of the car. (tr. 430 431 Micelli (tr. 247 bryan (tr. 854 Fleming)

While the agents were inventorying the car. NYPD Det. Nuzio walked up and inventoried the defendants backpack (tr. 385 385 336) which he found on the hood of the car (tr. 336 ) NYPD Det. Nuzio at the time was not apart of "Sparta" or an ATF agent and had no Jurisdiction or right to search or inventory the defendants property. Det. Nuzio did not know who put the back

1/11/23

pack on the hood of the car and the procedu
re used to remove the backpack from inside the
vehicle.

Even if a agent or member of Sparta
(Joint task force) would have searched or invent
oried the defendants backpack he or she would
not have found a Gun or blackpants inside the
backpack. The criminal complaint and the search
warrant affidavit all say the black pants were
in the car not in the defendants bookbag. When
the defense asked special agent tyler Micelli where
did he get the information as to where the black
pants were in the car he says clearly "Det. Nuzio"
(Tr. 498) But now at trial Det. Nizio says he
found the black pants in the defendants back
pack (Tr. 351) In Brocks testimony he clearly
says he packed the backpack and didn't put a
Gun or blackpants in there (Tr. 925) [917+0] He also states
where the black pants were at in the car (Tr. 931 )
and now we have proof that the backpack was
tampered with and the blackpants other items were
put in the backpack not found.

(1.) At trial
during Det. Nizio testimony was given the defendants
backpack and everything that was suppose to be

6/10

1/11/23

found inside the backpack besides the Gun at this point. Det. Nuzio points out that he doesn't remember # a pair of sandals (Champion) being in there, and his inventory pictures of the backpack corroborate that (tr. 350) so how after Det. Nuzio's inventory search of the backpack the ~~something~~ a pair of sandals appear in it.

(2.) The Mcdonald's receipt that was found in the blackpants pocket (tr. 822 to 824) and the red and white gloves Braek testifies to not being his or in his backpack (Tr. 923) are seen together in inventory pictures of the car in a black jimmy Jazz bag where Braek says the blackpants were (tr. 931       ) (see attached.)

Which shows that the blackpants and other items were put in the back pack and that the backpack was tampered with.

Det. Nuzio claims the blackpants and the Gun was in the defendants bookbag. He even took inventory pictures of both being in the backpack but NYPD Det. Nuzio was not qualified to handle the inventory of the defendants backpack for two reasons. (1.) NYPD Det. Nuzio at the time he inventoried the backpack was

7/10                                                          1/11/23

not a member of Sparta (joint task force) or a ATF agent
(tr. 329    ) and in the inventory protocols 12Z.
Processing vehicle/ conveyances (B)(Z) clearly
says "An inspection and inventory will be completed
by the seizing agent"!

(2.) He did not retrieve the
backpack from out of the car it's original place
and doesn't know who put it on the hood of the
car where he found it and the procedure used
in removing the backpack out of the car. (Tr. 386   )(386 to 387)

An in
order to maintain a positive chain of custody
you must have records accounting for the evid
ence from the time it was seized till the time it's
introduced as evidence at court.

Which also shows
a break in the chain of custody because no officer,
agent or member of Sparta can account for the
initial withdrawl of the backpack from the vehicle.
An during this break in the chain of custody and even
after the evidence shows the backpack was tampered
with and the evidence was misplaced.

I now cite
United States V. Diallo 507 Fed. Appx 89 and 133
S. Ct. 2750 186 L. Ed. 2d. 204 where the District courts

8/10                                                                                    1/11/23

ruled the Gun Inadmissible due to a break in the chain of custody.

NYPD Det. Nuzio also admits to grabbing several pairs of the defendants boxers jeans shirts and socks then without changing his gloves the Gun in the defendants backpack, contaminating evidence !!! (⬛⬛⬛) (Tr. 387 to 389)

No Fingerprints of the defendants was found on the Gun. The only place where the defendants Dna was recovered on the Gun is where Det. Nuzio says he's most likely to have grabbed the Gun (Tr. 389 to 390)

The Government and the lower courts state that the defendants suppression motion was denied because the evidence would have inevitably been discovered during a valid inventory search. In Order for the courts to find that the evidence inevitably would have been discovered in the course of an inventory search a court must make three findings.

(1.) that the police had legitimate custody of the vehicle or other property being searched so that an inventory search would have been justified.

(2.) that when the police in the police agency in question conducted

9/10                                                          1/11/23

inventory searches they did so pursuant to establised or standarized procedures.

(3.) that those inventory procedures would have inevitably led to the discovery of the challenged evidence.

United States v. Ruffin 841 F. Appx 319 320 2d Cir. 2021

The government Fail all three

(1.) The agents did not have legitimate custody of the defendants property because he was unlawfully arrested.

(2.) The consent to search was coerced and invalid because no agent or member of Sparta Inventory Searched the defendants property. An thats who the consent was given to (ATF). Also the agents didn't follow inventory protocols and the government failed to further Show established or standarized procedures.

(3.) The chain of custody was violated and the evidence was tampered with and contaminated by NYPD Det. Nuzio. Det. Nuzio is also caught making ~~Perjious~~ Perjurious testimony at trial NYPD. Det. Nuzio said be found the black pants in the

10/10                                                            1/11/23

defendants backpack (Tr. 351 ) but when attorney for the defense. Head case agent Tyler Miceli "where did he get the information as to where the black pants were in the car" he says clearly "Det Nuzio" (Tr. 495) Head case agent Tyler Miceli admitted that in his affidavit he never said or wrote the black pants were in the backpack but in the car (Tr. 495)

Therefore the defendant respectfully urges this court to suppress the defendants backpack and everything allegedly found in it and overturn the defendants conviction due to the unlawful arrest and insufficient evidence.



GOVERNMENT
EXHIBIT
**GX304B**
18-CR-684 (ENV)



was detained for several hours. There were not-too-subtle references by the agents to his young daughter who was sitting with her father while he was questioned,[2] and to his previous criminal record (IT, at p.12). When he asked if he could leave, the agents did not directly answer except to evasively say that he was not under arrest (IT, at pp. 2-3).[3] In addition, as the Court will recall, his identification of a photo purportedly of the defendant from video surveillance was suppressed because it was suggestive. (ECF# 122, at pp. 11-21). Because the government elected not to call him as a witness at the suppression hearing or at

---

[2] Interview transcript ("IT"), produced by the government on December 13, 2019, pursuant to the Court's Order on December 6, 2019, at p.13.

[3] PERSON A: Okay. What do you mean I'm not under arrest and I have the right to remain silent? What --

SAINT HILAIRE: Right. So we read you the rights, so like that we could talk to you in regards to this to what's happening. But you're not -- no, you're not --

PERSON A: But when you read me my rights, I'm arrested, right?

SAINT HILAIRE: No.

UNIDENTIFIED: Not at all. This is just protection, and so we can have that conversation with you.

SAINT HILAIRE: Right, right. That's so down the road, you don't say we forced you to talk to us, or whatever the case is. You understand what I'm saying?

PERSON A: No. I fully understand that. I just wanted to make sure, because if --

SAINT HILAIRE: No.

PERSON A: -- you reading me my rights, it means --

UNIDENTIFIED: Yeah.

SAINT HILAIRE: No, no, no.

PERSON A: I can't just get up and leave, right?

SAINT HILAIRE: No, no, no. Well, well, what we're going to do is --

PERSON A: I can't do that, right?

SAINT HILAIRE: Right. Listen, we could talk, we could talk about what's going on in regards to your vehicle.

PERSON A: Yeah.

SAINT HILAIRE: And you know, we'll take it from there. It's not -- I can tell you right now you're not under arrest, okay? All right. Now, what we're going to do is so you were brought in with two other gentlemen and your daughter, right, earlier today. Do you want to tell me what happened? You guys were in the car, jumped in the car?

6




# OFFICE OF CHIEF MEDICAL EXAMINER

520 First Avenue, New York, New York 10016

**Timothy D. Kupferschmid, Director**
**DEPARTMENT OF FORENSIC BIOLOGY**
**Charles S. Hirsch Center for Forensic Sciences**
**421 East 26th Street, New York, New York 10016**
Telephone: 212.323.1200  Email: DNALab@ocme.nyc.gov
Official Website: http://www.nyc.gov/ocme

**DATE:** April 30, 2019

## LABORATORY REPORT

**SUSPECT:** Elgin Brack

**ARREST NO:** B18652921 / Q18647403

**NYSID NO:** 14398258J

**LAB NO:** FBS19-01092

**REPORT ID:** CRT-0319-1572

## RESULTS AND CONCLUSIONS

STR DNA typing using the PowerPlex® Fusion PCR Amplification Kit was performed on the DNA sample from Elgin Brack. A 22-locus DNA profile was determined.

This DNA profile was compared to the results in the following report(s):

| FB Number | Complaint Number | Complainant's Name | Case Report ID(s) |
|---|---|---|---|
| FB18-08029 | 2018-108-06375 | ███████████ | CRT-1218-1347 |

The DNA profile of Elgin Brack matches the DNA profile of Male Donor A to the sample(s) listed below:

- swab of "grip" (19-locus profile)

**Sample: swab of "grip"**

Hypothesis 1: Elgin Brack and two unknown persons
Hypothesis 2: Three unknown persons

The DNA mixture found on swab of "grip" is approximately 3.93 quadrillion ($3.93 \times 10^{15}$) times more probable if the sample originated from Elgin Brack and two unknown persons than if it originated from three unknown persons. **Therefore, this supports that Elgin Brack is included as a contributor to this sample.**

This DNA profile could not be compared to the results in the following report(s) due to an insufficient concentration of DNA recovered from the evidence item(s) submitted:

| FB Number | Complaint Number | Complainant's Name | Case Report ID(s) |
|---|---|---|---|
| FB18-07813 | 2018-114-10370 | Rite Aid | CRT-1218-0653 |

**The DNA profile of Elgin Brack is suitable for entry into the OCME local DNA databank.**

**BRACK005721**

BS19-01092                                                          Elgin Brack

**EVIDENCE RECEIVED**

| ITEM | VOUCHER | DATE RECEIVED | DESCRIPTION |
|------|---------|---------------|-------------|
| 1.1 | 2000852432 | 03/15/2019 | DNA sample from Elgin Brack |
| 1.2 | | | DNA sample from Elgin Brack (not examined) |

**DISPOSITION**

The DNA extracts from samples and controls tested will be retained per Forensic Biology protocol. The remainder of the evidence will be returned to the OCME Evidence Unit.

**Analyst** : ███████████

(Criminalist, Level III)

Page 2 of 5

BRACK005722

Forfeiture and Seized Property Branch in accordance with law.

127. PROCESSING VEHICLES/CONVEYANCES.

a. Seizures and Forfeiture. Conveyances are subject to seizure for forfeiture by ATF under several statutory processes, particularly 49 U.S.C. section 80303. If special agents encounter conveyances that are subject to seizure and forfeiture under laws outside of ATF's jurisdiction, special agents will coordinate with the appropriate U.S. attorney and seek judicial forfeiture. Seized conveyances will be taken into ATF custody and transferred to the designated storage contractor as soon as possible.

b. Transfer of Conveyances to the Designated Storage Contractor.

(1) Within 5 days after the date of seizure, the seizing special agent will contact the Asset Forfeiture and Seized Property Branch to make arrangement for transfer of the conveyance to the designated storage contractor. The seizing special agent will enter the conveyance into N-Force using the accepted data entry practices.

(2) The conveyance shall be transferred in person at a site of mutual agreement between the seizing agent and the designated storage contractor. An inspection and inventory will be completed by the seizing agent and the designated storage contractor representative. The conveyance's condition (including damage) will be documented on the appropriate subcontractor form.

(3) The Asset Forfeiture and Seized Property Branch will forfeit all conveyances after the final claim date has expired. Prior to the forfeiture, the Asset Forfeiture and Seized Property Branch will ensure that no claims or petitions for remission or mitigation have been filed. The Asset Forfeiture and Seized Property Branch will contact the field division SAC, to determine whether the vehicle is desired for official use. If so, the field division SAC will follow the instructions on processing vehicles. The Asset Forfeiture and Seized Property Branch will be responsible for providing the designated property custodian with a copy of the "Declaration of Forfeiture" and a disposition order authorizing the sale or release of the conveyance.

c. Disposition of Item Not Subject to Forfeiture. A seized vehicle may be found to contain articles of a personal nature (e.g., violator's pocket radio, sunglasses, golf clubs, fishing equipment, baby seat). Such personal items normally are not subject to forfeiture and should be removed prior to placing the vehicle in storage.

(1) Whenever such items do not have evidentiary value, the person from whom the vehicle is seized should be allowed to remove personal items at the time of seizure. This return of items should be documented on ATF F 3400.23, especially if such articles are valuable.

(2) When it is not possible to return items at the time of seizure (e.g., when the owner is immediately placed in jail overnight), the special agent may hold the personal articles for safekeeping and subsequent release to the owner or designee as soon

as it is feasible.  In such cases, the special agent should prepare ATF F 3400.23 in duplicate and furnish a copy to the owner.

(3)   When personal articles are returned to the owner or the designee, the special agent will prepare a second ATF F 3400.23 and have the person sign for the articles' return.  The form will be retained in the field office investigative file to avoid an accusation concerning misappropriation of such articles.

d.   Inventory of Seized Vehicle, Vessel or Aircraft.

(1)   The seized conveyance will be entered as a property item in N-Force.  Special care must be taken in recording the vehicle identification number.

(2)   When a special agent seizes an aircraft, the logbooks and any other records relating to the operation and maintenance of the aircraft should also be seized.

(3)   An inventory search will be conducted on all seized vehicles and also vehicles taken into custody not for forfeiture or evidentiary purposes, but rather incident to arrest.  All personal property will be inventoried on an ATF F 3400.23 and removed before the vehicle is turned over to the national property contractor. Any such personal property, to include vehicles seized only incident to arrest, shall be returned forthwith to the defendant or his/her designee.

(a)   The Fourth Amendment prohibits unreasonable searches and seizure. However, an inventory search performed pursuant to standardized procedures may be conducted on a vehicle or other property without a warrant or probable cause for the following purposes:

1   Protecting the owner's property while it remains in agent custody;

2   Protecting the agency or special agent against claims or disputes over lost, stolen, or damaged property; and

3   Protecting the special agent and other persons from potential danger.

(b)   Under no circumstances may an inventory search be conducted as a pretext for an investigatory search without a warrant or probable cause. An investigatory search may be conducted only on the authority of a search warrant or when some recognized Fourth Amendment exception applies.  However, the mere fact that a legitimate inventory search also may benefit an investigation does not invalidate the inventory process.

(c)   After a seizure the ATF special agent(s) should prepare an inventory as soon as possible using an ATF F 3400.23, Receipt for Property and Other

Items (see Exhibit 2). The inventory need not be contemporaneous with an arrest, seizure, or other event resulting in lawful Government possession.

(d)     The inventory search must be limited to locating valuables or harmful items for storage.

(e)     The conveyance or property lawfully within Government possession must be thoroughly searched as follows:

1       The interior areas of a vehicle or other conveyance, including all compartments, such as the engine compartment, the passenger compartment, the glove compartment, and trunk, should be opened and inventoried.

2       All containers whether or not locked or otherwise sealed should be opened and inventoried.

(f)     All contraband, items subject to forfeiture, or evidence discovered during the course of an inventory search shall be handled as prescribed in this order.

(g)     Accessories, jacks, and other standard maintenance tools are considered part of a conveyance. Installed radios, tape players, compact disk (CD) players, etc., are also part of the same.

(h)     Other personal items (audiotapes, CDs, clothing, etc.) should be removed and inventoried on ATF F 3400.23.

(i)     Whenever possible, the receipt (ATF F 3400.23) shall be signed by and left with the owner. If the owner is not present, the receipt (ATF F 3400.23) shall be left in the vehicle.

(j)     ATF special agents will take appropriate measures to return property that is not subject to seizure or is contraband, to the lawful owner ( or his/her designee) as soon as possible. When property found in the inventory search belongs to a person who has been placed under arrest, the special agent(s) should request that the arrestee designate someone to take possession. ATF special agents should not release any property in this manner without written consent of the arrestee.

(k)     The individual receiving return of the personal property will be required to sign and date the ATF F 3400.23 under the word "Returned" hand written

by the special agent.  Alternatively the returning special agent may generate a new ATF F 3400.23 transmitting the personal property back to the owner or owner's designee.

(l) Copies of all documentation should be scanned into the source folder of N-Force and placed in the investigative file.

128. PROCESSING PROPERTY ENTERED INTO COURT AS EVIDENCE.

a. When abandoned property, purchased property, or property seized for evidence is actually entered into evidence in court, it will be disposed of in accordance with the instructions of the court or the U.S. attorney.  Generally, the U.S. attorney will simply return the property to the special agent and instruct the special agent either to return it to a specified person or to dispose of it in accordance with appropriate ATF administrative procedures.

b. If the court directs that the property be returned to a specified person and it is known that such person is not legally entitled to the property or is barred by law from possessing it, the special agent should bring this to the attention of the U.S. attorney so that other disposition may be prescribed.

c. If the court advises that the property will be disposed of by the U.S. Marshals Service or the designated property custodian, the special agent will so advise the RAC/GS and the SAC, Asset Forfeiture and Seized Property Branch.

129. PROCESSING AND STORING ELECTRONIC MEDIA EVIDENCE.

a. Computers and related evidence range from the mainframe computer to the pocket-sized personal data assistant to the floppy diskette, compact disc, tape or the smallest electronic chip device.  Images, audio, text, and other data on these media are easily altered or destroyed.  It is imperative that special agents recognize, protect, seize, and search such devices in accordance with the applicable statutes, policies, and best practices and guidelines.  Refer to ATF B 7200.3, Computer Evidence – Seizure and Examination.

b. Electronic media should be packaged in non-plastic bags to avoid the buildup of electrostatic charges.  When computer equipment is seized, evidence tape should be placed across the drive slots.

c. The special agent should be aware of electrostatic buildup while handling electronic media.  Electronic media should not be placed in close proximity to any strong magnetic fields.  Telephones, radio transmitters, and office machines may create magnetic fields.

d. Transporting personnel should keep all hardware and software in dust-free, climate-controlled environments.  Computer-related evidence is sensitive to heat and humidity